Brinkerhorf, C. J.
The question presented by the record in this case is, whether a corporation may be held liable to exemplary or punitive damages for such acts, done by its agents or servants acting within the scope of their employment, as would, if done by an individual acting for himself, render him liable for such damages.
That such damages may, in a proper case, be recovered against an individual party acting for himself, is settled in this State by the case of Roberts v. Mason, 10 Ohio St. R. 277, to which the court below, in its charge to the jury, referred ; but whether the same doctrine is, in any case, applicable to corporations acting through their servants or agents, is a question which has not heretofore been determined in this *168 State by the court of last resort. The question is one of much practical importance, both to corporations and the public with which they deal and come in contact, and we have endeavored to give to it a careful consideration ; and having done so, a majority of the court find ourselves constrained to answer the question in the affirmative.
In our deliberations on the question, and looking to the adjudications of courts outside of Ohio, we find no settled or decidedly preponderant course of decision upon it. The cases are irreconcilably conflicting; and the only aid we can derive from them is through the suggestions of legal principles which they contain.
The foundation principle which governs these cases, it seems to us, is found in the maxim gui fadt jper dUmm fadt jper se. The act of the servant, done within the scope and in the exercise of his employment, is in law the act of the master himself.
And “ this legal unity of the principal and agent,” says the supreme court of Mississippi, in New Orleans, Jackson and Great Northern R. R. Co. v. Bailey (40 Miss. R. 453), "in respect to the wrongful or tortious, as well as the rightful acts of the agent, done in the course of his employment, is an incident which the law has wisely attached to the relation, from its earliest history.”
And Blackstone in his Commentaries says, “ The master may be frequently a loser by the trust reposed in his servant, but never can be a gainer; he may frequently be answerable for his servant’s misbehavior, but never can shelter himself from punishment by laying the blame on his agent. The reason of this is still uniform and the same, — that the wrong done by the servant is looked upon in law as the wrong of the master himself; and it is a standing maxim, that no in an shall be allowed to make any advantage of his own wrong.” Yol. i. page 431.
In Story on Agency the law is thus stated: “ It is a general doctrine of law, that, although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has au *169 thorized or co-operated in those acts or misdeeds, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, and omissions of duty, of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts, or disapproved of them. In all such cases the rule applies, respondeat superior; and it is founded upon public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the .principal, or indirectly with him through the instrumentality of agents. In every such case, the principal holds out his agent as competent, and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency.” Sec. 452.
Now this general doctrine, as to the legal identity of principal and agent, is fundamental. It is established. We are not at liberty to ignore or disregard it.; and no one even dreams that it ever will, or ever ought to be, abrogated. And resting as it does on sound principles of public policy and regard for the public convenience and safety, it seems to me to apply with peculiar propriety to corporations — which áre capable of action only through the medium of agents,' and which touch, infringe upon, and come in contact with individual persons and the public, only by means of their agents and servants.
In Philadelphia, Wilmington, and Baltimore R. R. Co. v. Quigley, 21 Howard's U. S. Rep. 202, it was held that a railroad corporation might be guilty of acting maliciously, and so render itself liable to damages for the publication of a libel, although it acted, and could act, only through the medium of agents. And Campbell, J., delivering the opinion of the court in that case, says: “ The result of the cases is, that for acts done by the agents of a corporation, either in contractu or in delicto, in the course of its business and of their employment, the corporation is responsible, as an individual is responsible in similar circumstances.” And it is *170 furthermore noticeable in that case, that the charge of the circuit court to the jury, to the effect that they were at liberty to award exemplary or punitive damages, was held to be erroneous, solely for the reason — as in P., Ft. W. and C. Railroad Co. v. Slusser, decided by us at this term*—that the facts by which the wrongful act was characterized did not make a proper case for the application of the rule on the subject, had it been done by a natural person.
Rut, the legal identity of the master and servant being admitted, and the legal consequence — that the master is responsible in damages for the wrongful acts of the servant done within the scope of his employment, the particular question still remains, whether such damages can properly and legally transcend the measure of compensation merely; or may they, in a proper case, be given to the extent of exemplary or punitive damages, as in cases against a natural person ? In answer to this query, it is proper to inquire what is the ground of reason and principle on which exemplary damages are allowable in any case ? ' The answer is ready and clear. Nobody will dispute it. It rests not on the ground of abstract or theoretical justice, but on the ground of public policy — a policy which seeks to promote the public safety; to punish, through the medium of a civil proceeding, a fraudulent, malicious, insulting, or wilful wrongdoer, and to hold him up as a warning example to others, to deter them from offending in like manner. Now, why do not the same considerations of piublic policy apply as well to corporations as to natural persons ? I am unable to see why they do not. Corporations, embodying, as they often do, the concentrated wealth and influence of many individuals, certainly may have the power to do injury at least equal to that of natural persons; and it seems to me that the history of corporations affords no satisfactory guaranty that they may not use that power' for purposes inimical to individual and public interests, unless restrained by a consciousness of amenability to effective legal penalties.
*171 The legislative policy of our State has been exceedingly liberal towards railroad corporations, in delegating to them, to a liberal extent, its sovereign power of eminent domain; in the unlimited discretion accorded to them in the selection ef their routes; in the legal facilities afforded them for raising the means for the construction of their roads; in authorizing consolidations with other companies, and in the enactment of penal statutes for their protection. . Directly and incidentally they contribute much to the wealth and convenience of our people; but the wealth that controls them is largely held by persons outside of our State, and is constantly changing hands; and individual stockholders feel but little personal responsibility for wrongs which may be done by their servants to individuals placed within their power. Practically, they have almost a monopoly of the means of travel. Millions of persons annually pass under the control and within the power of their servants. And unless the public, through the medium of our laws, retain the means to exercise an effective restraint upon any tendency to wrongdoing to which they may be subject, and especially in respect to the care, or the want of it, with which their, servants may be selected, it seems to me there is so much danger of the abuse of power in this direction as to forbid the recognition of a distinction between them, acting through agents, and individuals acting in their own proper persons, in respect to the liabilities consequent upon tortious action. The actual management of such corporations is apt to fall into the • hands of either a single individual, or of a small and closely associated number of individuals; and the danger is that such persons will be led by a spirit of nepotism or personal favoritism, or by false notions of economy leading them to fix the compensation for the services of their servants at a rate inadequate to secure the services of competent and trustworthy men, to forget the higher and paramount duty due to the public in this particular, unless the stern, but just and discriminating, hand of the law is kept constantly visible before them.
Delivering the opinion of the supreme court of New *172 Hampshire on this question, Perley, C.J., says: “ If a corporation like this railroad is guilty of an act or default, such as, in the case of an individual, would subject him to exemplary damages, we think the same rule must be applied to the corporation.” . . . “According to the general theory of the common law, crimes are prosecuted and punished by the State alone. Individuals are not supposed to have any private interest in the punishment of public offences. And so, on the other hand, as a general rule, the plaintiff in a civil action recovers a mere compensation for his private injury.” He adds, “ It is, however, extremely well settled that exemplary or vindictive damages may in certain cases be recovered ; and this is perhaps in accordance with the legislative policy which has given pecuniary penalties in-numerous instances to private prosecutors of certain offences. Where the wrong done to the party partakes of a criminal character, though not punishable as an offence against the State, the public may be said to have an interest that the wrong doer should be prosecuted and brought to justice on a civil suit; and exemplary damages may in such cases encourage prosecutions where a mere compensation for the private injury would not repay the trouble and expense of the proceeding.” Hopkins v. The Atlantic and St. Lawrence Railroad, 36 N. H. R. 9.
We cannot say, as in the case of the P., Fort W. and C. R. R. v. Slusser, above referred to, that this is not a case for exemplary damages, for the evidence is not fully set forth in the record; and the facts which the bill of exceptions declares the evidence of the plaintiff below tended to prove are such as authorized the court to submit the question to the consideration of the jury.

Judgment affirmed.

Scott and White, JJ., concurred.
Welch and Day, JJ., dissented.
(See page 590.)

 Ante, p. 157.